IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ADOLFO MOYA SALAZAR, JR, ) | |
| ID # 01811309, ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 3:19-CV-606-K-BH |
| ) | |
| DIRECTOR, Texas Department of Criminal ) | |
| Justice, Correctional Institutions Division, ) | |
| Respondent. ) | Referred to U.S. Magistrate Judge[1] |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Before the Court is the *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on March 12, 2019 (doc. 3). Based on the relevant filings and applicable law, the petition should be **DENIED** with prejudice.

**I.    BACKGROUND**

Adolfo Moya Salazar, Jr. (Petitioner),[2] an inmate currently incarcerated in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), challenges his convictions and sentences in Cause Nos. F10-63048-I and F10-63151-I in the Criminal District Court No. 2 of Dallas County, Texas, under 28 U.S.C. § 2254. (*See* doc. 3 at 2.)[3] The respondent is the Director of TDCJ-CID (Respondent). (*See id.* at 1.)

**A.    State Court Proceedings**

Petitioner was charged by indictment in Cause Nos. F10-63048-I and F10-63151-I in the

---

[1] By *Special Order No. 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation.

[2] Some of the state records provided in this case show the petitioner's first name as Aldolfo, but he signed his § 2254 filings as Adolfo Moya Salazar, Jr.

[3] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

Criminal District Court No. 2 of Dallas County, Texas, with burglary of a habitation (the burglary case) and aggravated robbery with a deadly weapon, enhanced by a prior felony conviction (the aggravated robbery case), respectively. (*See* doc. 15-2 at 12, 20; doc. 15-3 at 12, 20.) Petitioner pleaded guilty to both offenses under separate plea agreements. (*See* doc. 15-2 at 17-18; doc. 15-3 at 17-18.) The trial court deferred adjudication in both cases and placed him on a ten-year period of community supervision; he was also ordered to serve 180 days in the Dallas County Jail for both cases, and to pay a $2,500 fine in the aggravated robbery case. (*See* doc. 15-2 at 20-22; doc. 15-3 at 20-22; doc. 15-5 at 8.) Petitioner was ordered to comply with a list of conditions of community supervision in both cases. (*See* doc. 15-2 at 23-25; doc. 15-3 at 23-25.)

In April 2012, the state filed a motion to revoke probation or proceed with an adjudication of guilt in each case based on Petitioner's alleged violation of several conditions of his community supervision, which were received by Petitioner in May 2012. (*See* doc. 15-2 at 27-28; doc. 15-3 at 27-28.) The motions alleged that Petitioner violated condition (a) of his community supervision, which required that he "[c]ommit no offense against the laws of this or any other State or the United States, and do not possess a firearm[,]" when he was arrested in Dallas County on or around April 8, 2012, for aggravated robbery in case F1254268 and unlawfully carrying a weapon in case M1255351. (doc. 15-2 at 24, 28; doc. 15-3 at 24, 28.) He was also alleged to have violated other conditions of his community supervision by failing to pay required fees, court costs, and fines, failing to complete community service hours, and failing to participate in required programs. (*See* doc. 15-2 at 28; doc. 15-3 at 28.)

On August 28, 2012, two days before the hearing on the state's motions to adjudicate guilt, the state filed amended motions alleging that Petitioner violated condition (a) of his community supervision when he was arrested in Dallas County on or around April 8, 2012, for aggravated

2

assault with a deadly weapon as alleged in Cause No. F1254579I, and for unlawfully carrying a weapon as alleged in Cause No. M1255351M. (*See* doc. 15-2 at 32-33; doc. 15-3 at 33-34.) It also again alleged that he violated other conditions of his community supervision by failing to pay required fees, court costs, and fines, failing to complete community service hours, and failing to participate in required programs. (*See id.*)

At the hearing on August 30, 2012, Petitioner's counsel contended that the August 2012 amended motions were untimely, and he addressed the allegations in the original May 2012 motions. (*See* doc. 15-6 at 6-7.) He entered a plea of "true" to the "technical violations" of his community supervision, and a plea of "not true" to the violations of condition (a) of his community supervision. (*Id.* at 6.) He moved to strike the alleged violations of condition (a), arguing that the original charge for aggravated robbery "was never followed through," and the second charge was not a violation because it only alleged an arrest. (*Id.* at 7.) In response, the state argued that "[i]t is a violation to be involved in a crime and to be in a crime area around people that are committing crimes," that the aggravated robbery charge was filed as an aggravated assault with a deadly weapon case after investigation, and that a case was filed on the second charge for which Petitioner was arrested. (*Id.*; *see also id.* at 8.) Petitioner's arguments were overruled. (*See id.* at 8.) Following testimony and arguments by counsel, he was adjudicated guilty in both cases and sentenced to concurrent terms of imprisonment of twenty years in the burglary case, and sixty years in the aggravated robbery case. (*See id.* at 58-59; doc. 15-2 at 36-38; doc. 15-3 at 37-39.) On July 15, 2013, the judgments were affirmed on direct appeal. *See Salazar v. State*, Nos. 05–12–01228–CR, 05–12–01229–CR, 2013 WL 3771358 (Tex. App.—Dallas July 15, 2013, pet. ref'd). Petitioner did not file a timely petition for discretionary review (PDR) with the Texas Court of Criminal Appeals.

Petitioner's first state habeas application in each case, filed by counsel on December 27, 2016, claimed that he was denied the right to file a timely PDR because his appellate counsel failed to notify him of the decision affirming his convictions and sentences. (*See* doc. 15-15 at 6-20; doc. 15-19 at 5-17.) On March 27, 2017, the Texas Court of Criminal Appeals granted relief on the habeas applications, and Petitioner was permitted to file out-of-time PDRs. *See Ex parte Salazar*, Nos. WR–86,937–01, WR–86,397–02, 2017 WL 1089969 (Tex. Crim. App. Mar. 22, 2017). His out-of-time PDRs were refused on September 13, 2017. (*See* doc. 15-1.) His second state habeas applications in each case, signed on August 10, 2018, and received by the trial court on September 25, 2018, were denied without written order by the Texas Court of Criminal Appeals on December 12, 2018. (*See* doc. 15-20; doc. 15-21 at 17-34; doc. 15-22; doc. 15-23 at 28-45.)

**B.** **Substantive Claims**

The § 2254 petition asserts the following grounds for relief:

(1) Did the state Supreme Court by it's [sic] decision of "Denied without written order" participate in denial of petitioners [sic] constitutional rights both 14th in Fair trial and due process and 6th in effective assistance of counsels [sic] at trial and appeal stages, in denial of clearly established Federal law and in Unreasonable Determination of the Facts[ ]; and

(2) Did the state Supreme Court participate in the violation of petitioner's 14th Amendment in it's [sic] decision to "Denie [sic] without written order" petitioners [sic] claim that the trial court violated his 14th Amendment by overruling his counsels [sic] objection to the improper terms on motion to revoke probation?

(doc. 3 at 6.) Respondent filed a response on June 12, 2019, and Petitioner filed a reply on July 8, 2019. (*See* docs. 14, 16.)

## II.   APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, on April 24, 1996. Title I of the Act applies to all federal petitions

for habeas corpus filed on or after its effective date. *Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions. Under § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term of art that refers to whether a court's disposition of the case was substantive, as opposed to procedural." *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact. *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001). A decision is contrary to clearly established federal law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). As for the "unreasonable application" standard, a writ may issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*; *accord Penry v. Johnson*, 532 U.S. 782, 792 (2001). Likewise, a state court unreasonably applies Supreme Court precedent if it "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new

context where it should apply." *Williams*, 529 U.S. at 407. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). A petitioner must show that "there was no reasonable basis for the state court to deny relief." *Id.* at 98.

      A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142,149-52 (5th Cir. 2003). The AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. 685, 693 (2002) (citing *Williams*, 529 U.S. at 403-04). A state application that is denied without written order by the Texas Court of Criminal Appeals is an adjudication on the merits. *See Singleton v. Johnson*, 178 F. 3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding that a denial signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Where the decision is a summary denial or affirmance, however, a "federal [habeas] court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In the absence of a "related state-court decision providing the court's reasoning, a federal court assumes that the state court applied the proper clearly established federal law to the facts of the case and then determines whether its

decision was contrary to or an objectively unreasonable application of that law." *Chadman v. Lumpkin*, No. 4:20-CV-1131-O, 2021 WL 1910043, at *3 (N.D. Tex. May 12, 2021) (citing 28 U.S.C. § 2254(d)(1); *Virgil v. Dretke,* 446 F.3d 598, 604 (5th Cir. 2006)).

Section 2254(d)(2) concerns questions of fact. *See Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000). Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'" *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000). The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In his first ground for relief, Petitioner contends that the state court's denial of his Sixth and Fourteenth Amendment claims of ineffective assistance of trial and appellate counsel in the state habeas proceedings was made "in denial of clearly established Federal law and in Unreasonable Determination of the Facts." (doc. 3 at 6; *see also* doc. 4 at 2.) He "claims ineffective assistance of both trial and appeal counsel's [sic] due to no notice given to Defense Counsel of the new allegations brought in a new motion to revoke/Adjudicate [P]etitioner's probation until the day of trial sentencing hearing with no chance to prepare Defense to allegations and no pre-investigation on the charges." (doc. 4 at 4.)

The Sixth Amendment to the United States Constitution provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668, 686

(1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id.* at 697. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Williams*, 529 U.S. at 393 n.17 (recognizing that the inquiry focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair."). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

**A.     Notice**

Petitioner alleges that counsel "was with out [sic] notice of Correct Allegations on motion to revoke at trial until day of trial in which [P]etitioner received a 60 and a 20 year sentence without a proper chance to defend[.]" (doc. 4 at 6.) He claims that the amended motions to adjudicate guilt "contain[ ] a switch of the Penal Statute charges which resulted in the ineffectiveness of his

8

trial counsel's total representation[.]" (*Id.*)

The record shows that the August 2012 amended motions alleged violations of the same conditions of community supervision as the original motions filed in April 2012, that were received by Petitioner in May 2012. (*See* doc. 15-2 at 27-28, 33; doc. 15-3 at 27-28, 34.) Regarding Petitioner's violations of condition (a) of his community supervision, to which he pleaded "not true," the original motions alleged that condition (a) was violated when he was arrested on April 8, 2012, in Dallas County for aggravated robbery in case F1254268 and unlawfully carrying a weapon in case M1255351. (*See* doc. 15-2 at 28; doc. 15-3 at 28.) The amended motions again alleged that condition (a) was violated when Petitioner was arrested on April 8, 2012 in Dallas County, but amended the first charge to aggravated assault with a deadly weapon as alleged in Cause No. F1254579I. (*See* doc. 15-2 at 28, 33; doc. 15-3 at 28, 34.) They also amended the second charge's case number from case M1255351 to Cause No. M1255351M. (*See id.*) The amended motions were filed and received by Petitioner on August 28, 2012, two days before the revocation proceeding. (*See* doc. 15-2 at 32; doc. 15-3 at 33.)

At the revocation proceeding, counsel acknowledged that the amended motions were filed, contended that they were untimely, and moved to strike the allegations contained in the original motions relating to Petitioner's violation of condition (a) of his community supervision. (*See* doc. 15-6 at 6-7.) He argued that the first charge for aggravated robbery was never filed, and as to the second charge for unlawfully carrying a weapon, an arrest was not a violation of Petitioner's community supervision. (*See id.* at 7.) The state responded that it was "a violation to be involved in a crime and to be in a crime area around people that are committing crimes." (*Id.*) It also explained that the aggravated robbery charge from the original motions was later filed as an aggravated assault with a deadly weapon charge after investigation, while the second charge was

9

filed under the identified case number. (*See id.* at 8.) Counsel's arguments and objections were overruled, and he did not otherwise challenge the adequacy of the notice of the allegations in the amended motions. (*See id.*) The trial court then heard witness testimony about Petitioner and the events of April 8, 2012, that resulted in his arrest. (*See id.* at 9-50.) Counsel cross-examined the state's witnesses and made closing arguments. (*See id.* at 12-15, 23-28, 34-41, 49-53, 57-58.)

Assuming for purposes of this motion only that counsel rendered deficient performance regarding notice of the allegations in the amended motions as alleged by Petitioner, *Strickland* also requires a showing of prejudice. To show prejudice, Petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992).

Petitioner offers no facts or evidence beyond conclusory allegations and speculation to demonstrate a reasonable probability that the result of the revocation proceeding would have been different but for counsel's alleged deficiency. Conclusory allegations and speculation are insufficient to establish prejudice. *See Miller*, 200 F.3d at 282 ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding."); *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Accordingly, he has not shown prejudice under *Strickland*, and he has not shown that the state court's rejection of this claim was unreasonable. The claim should be denied.

**B.     Failure to Investigate**

Petitioner contends that counsel was ineffective because counsel failed to confer with him

and prepare a defense, failed to conduct "pre-investigative work," and failed to "interview potential witnesses and make independent examination of the facts, circumstances, pleadings and laws involved." (doc. 4 at 5-6; *see also* doc. 16 at 9.)

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. To establish ineffective assistance of counsel based on a failure to investigate, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial." *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005).

Further, "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir. 2009). In order "to prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Id.*; *see also Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985).

Here, Petitioner fails to explain what investigation his counsel could have conducted or what evidence any such investigation would have revealed. Nor has he identified any evidence of which counsel was not, but should have been, aware.[4] He also fails to identify any witnesses, show that they were available to testify and would have done so, set out their proposed testimony, and

---

[4] To the extent Petitioner's filings may be liberally construed as alleging that counsel was not, but should have been, aware of the new allegations in the amended motions to adjudicate guilt, his claim is without merit. The record shows that the amended motions were filed in the trial court and received by Petitioner on August 28, 2012, and that counsel was aware of them when he contended that they were untimely at the revocation proceeding. (*See* doc. 15-2 at 32; doc. 15-3 at 33; doc. 15-6 at 6-7.) His conclusory statements are insufficient to show that counsel was deficient or that the state court's rejection of this claim was unreasonable. Any claim on this ground should therefore be denied.

show that the testimony would have been favorable to a particular defense. He has failed to show that counsel's performance was deficient regarding investigation or defense of the motions to adjudicate guilt, or any resulting prejudice under *Strickland*. Because he has not shown that counsel was ineffective, he has not shown that the state court's rejection of this claim was unreasonable. The claim should be denied.

C. **Appellate Counsel**

Petitioner contends that his appellate counsel "was ineffective in his representation in that he did not raise a Fundamental and Constitutional error which is a reversable [sic] error by standards of Law even after it was revealed by State's brief in reply to petitioner's appeal Brief[.]" (doc. 4 at 6; *see* doc. 16 at 11-12.) He appears to claim that appellate counsel should have raised a claim that trial counsel did not receive notice of the alleged violations of condition (a) of his community supervision set out in the amended motions to adjudicate guilt. (*See* doc. 4 at 6.)

The federal constitution also guarantees a criminal defendant the effective assistance of counsel on appeal. *Evitts*, 469 U.S. at 396. Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*. Under *Strickland*, the petitioner must show a reasonable probability that but for counsel's deficient representation, he would have prevailed on his appeal. *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid,

12

meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and internal citations omitted). To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal." *Phillips*, 210 F.3d at 348.

Here, Petitioner received notice of his alleged violations of the conditions of community supervision no later than May 2012, three months before the revocation proceeding, when the state filed its original motions to adjudicate guilt. (*See* doc. 15-2 at 27-28; doc. 15-3 at 27-28.) As discussed, at the revocation proceeding, counsel acknowledged that the amended motions were filed, argued that they were untimely, and objected to the alleged violations of condition (a) of Petitioner's community supervision in the original motions. (*See* doc. 15-6 at 6-7.) Counsel did not challenge the adequacy of the notice of Petitioner's alleged violations. The trial court overruled counsel's arguments, and counsel proceeded to cross-examine the state's witnesses and make closing arguments. (*See id.* at 8, 12-15, 23-28, 34-41, 49-53, 57-58.) Petitioner's claim that counsel did not receive notice of his community supervision violations is not supported by the record and is without merit.[5] Further, Petitioner has not identified any controlling precedent that appellate counsel should have argued, and he has not demonstrated resulting prejudice. *See Auvenshine v. Davis*, No. 4:17-CV-294-Y, 2018 WL 2064704, at *4 (N.D. Tex. May 3, 2018) (finding that *Strickland* "[p]rejudice does not result from appellate counsel's failure to assert meritless claims or arguments.").

Petitioner has not shown that appellate counsel rendered ineffective assistance or that the

---

[5] To the extent Petitioner's § 2254 filings can be liberally construed to allege that appellate counsel was ineffective for failing to raise a claim that the amended motions "contain[ ] a switch of Penal Statute charges which resulted in the ineffectiveness of his trial counsel's total representation," his conclusory statements are insufficient to show that appellate counsel rendered ineffective assistance. *See Miller*, 200 F.3d at 282; *Green*, 160 F.3d at 1042.

13

state court's rejection of this claim was unreasonable. The claim should be denied.

### IV. MOTION TO STRIKE

In his second ground, Petitioner contends that "the trial court violated his 14th Amendment by overruling his counsels [sic] objection to the improper terms on motion to revoke probation[.]" (doc. 4 at 7.) He argues that "to allege petitioner was 'Arrested For' anything does not hold enough weight to rightfully allege to the Court a violation was committed, nor does it properly put the defense counsel on notice as to the nature and cause of said crime to prepare defense, and that is in violation of his 14th Amendment [rights]." (*Id.* at 8.)

Because the state intermediate appellate court's decision was the last to provide a rationale for denying Petitioner's claim, the Court "looks through" the Texas Court of Criminal Appeals' unexplained denial without written order to that decision, and assumes the Texas Court of Criminal Appeals adopted the same reasoning. *Wilson*, 138 S. Ct. at 1192. On direct appeal, Petitioner contended that the trial court erred when it overruled counsel's motion to strike; he "argue[d] the State alleged he violated his community supervision by being 'arrested for' two offenses, and being arrested did not violate the conditions of community supervision." *Salazar*, 2013 WL 3771358 at *2. His argument was rejected:

> We conclude that, although couched in terms that [Petitioner] was arrested for new offenses rather than that [Petitioner] had committed new offenses, the State's motion to proceed with adjudication of guilt gave [Petitioner] fair notice that the State alleged he had violated condition (a) of the terms of his community supervision. The motion stated that [Petitioner] had been arrested for aggravated assault and for unlawfully carrying a weapon and provided the cause numbers in which the new charges had been filed. [Petitioner] does not claim to have been misled or surprised by the State's position that he violated the terms of his community supervision by committing the offenses of aggravated assault and unlawfully carrying a weapon. He also does not contend that his ability to prepare a defense was affected by the wording of the State's motion. We conclude that [Petitioner] was given fair notice, and understood, that the State would attempt to prove he violated condition (a) of his community supervision by committing the offenses of aggravated assault and unlawfully carrying a weapon. We resolve

[Petitioner's] second issue against him.

*Id.* at *3 (citation and footnote omitted).

Here, Petitioner cites *United States v. Webster*, 492 F.2d 1048 (D.D.C. 1974), to support his ground for relief. (*See* doc. 4 at 7-8; doc. 16 at 13.) *Webster* is not binding authority, is distinguishable from this action,[6] and does not involve "clearly established Federal law, as determined by the Supreme Court of the United States," relevant to the basis of Petitioner's claim. 28 U.S.C. § 2254(d)(1). Although Petitioner disagrees with the state intermediate appellate court's analysis and findings, he has not shown that its decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented. His claim should be denied.[7]

## V. PROSECUTORIAL MISCONDUCT

In his memorandum in support, Petitioner contends that "the Government violates the right to effective assistance of counsel when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense. Like not serve [sic] Defense Counsel with proper notice of charges till [sic] day of trial then sentenced petitioner to 60 and 20 years by using the evidence of new charges to not give petitioner's Defense Counsel any chance of a defense." (doc. 4 at 5; *see also* doc. 16 at 7-9, 11.) To the extent these allegations can be liberally construed to raise an independent claim of prosecutorial misconduct, the claim fails.

---

[6] *Webster* predates the enactment of the AEDPA's amendments to § 2254(d), and involves a direct appeal, treated as a motion for habeas corpus under 28 U.S.C. § 2255, of a federal district court's order revoking a federal defendant's probation. *See Webster*, 492 F.2d at 1048, 1051.

[7] Petitioner also appears to contend that the state's filing of the amended motions to adjudicate guilt violated Federal Rule of Criminal Procedure 32.1. (*See* doc. 4 at 5, 8; doc. 16 at 9.) Because his criminal proceedings took place in state court under state law, the Federal Rules of Criminal Procedure do not apply. *See, e.g.*, *Cameron v. Hauck*, 383 F.2d 966, 971 n.7 (5th Cir. 1967) (addressing state habeas petitioner's reliance on the Federal Rules of Criminal Procedure and stating, "The Federal Rules do not apply to state cases."); *Mosley v. Cockrell*, No. 3:01-CV-1101-H, 2003 WL 21832120, at *10 (N.D. Tex. Aug. 6, 2003) ("The Federal Rules of Criminal Procedure have no applicability to [§ 2254] petitioner's state criminal proceedings.").

"Prosecutorial misconduct implicates due process concerns." *Foy v. Donnelly,* 959 F.2d 1307, 1316 (5th Cir. 1992). Actions and statements of a prosecutor may violate due process in two ways: "[t]hey may abridge a specific right conferred by the Bill of Rights, or may constitute a denial of due process generally, thus constituting a 'generic substantive due process' violation." *Id.* (quoting *Rogers v. Lynaugh,* 848 F.2d 606, 608 (5th Cir. 1988)). Federal courts apply "a two-step analysis to charges of prosecutorial misconduct." *United States v. Duffaut,* 314 F.3d 203, 210 (5th Cir. 2002). A court first decides whether the prosecutor's actions were improper and, if so, it then determines whether the actions "prejudiced the defendant's substantive rights." *Id.*

When a petitioner asserts a generic due process violation, and it is determined that the prosecution's actions were improper, a court determines whether the prosecutorial actions "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)). In the habeas context, the appropriate standard of review for such allegations is "the narrow one of due process, and not the broad exercise of supervisory power." *Id.* (quoting *Donnelly*, 416 U.S. at 642). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982). "A trial is fundamentally unfair if there is a reasonable probability that the verdict might have been different had the trial been properly conducted." *Foy,* 959 F.2d at 1317 (citation and internal quotation marks omitted).

Under Texas state law, a motion seeking to revoke community supervision and adjudicate guilt can be amended for good cause less than seven days before the revocation proceeding. Tex. Code Crim. Pro. art. 42A.751(f). Because the prosecution could have amended the motions under Article 42A.751(f), Petitioner has not shown that it acted improperly when it filed amended

motions two days before the revocation proceeding. (*See* doc. 15-2 at 32-33; doc. 15-3 at 33-34.) Even if the prosecution had acted improperly as Petitioner alleges, he has not shown a reasonable probability that the outcome of the proceeding would have been different absent the alleged misconduct. His conclusory allegations otherwise are insufficient to merit § 2254 relief. *See Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) ("Mere conclusory statements do not raise a constitutional issue in a habeas case."). Accordingly, Petitioner has not shown that the state court's rejection of this claim was unreasonable, and the claim should be denied.

## VI. STATE HABEAS PROCEEDINGS

Petitioner also appears to contend that the trial court and the Texas Court of Criminal Appeals violated his constitutional rights during the habeas proceedings. (*See* doc. 3 at 6; doc. 4 at 2-4.) To the extent he is asserting claims based on the state habeas proceedings, "[a]n attack on a state habeas proceeding does not entitle the petitioner to [federal] habeas relief in respect to his conviction, as it 'is an attack on a proceeding collateral to the detention and not the detention itself.'" *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995); *see also Brown v. Dretke*, 419 F.3d 365, 378 (5th Cir. 2005) ("alleged infirmities in state habeas proceedings are not grounds for federal habeas relief."). Any claims attacking the state habeas proceedings should also be denied.

## VII. EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing on his claims. (*See* doc. 3 at 7; doc. 4 at 9; doc. 16 at 16.) Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary. Petitioner has not shown he is entitled to an evidentiary hearing.

## VIII. RECOMMENDATION

The *Petition for a Writ of Habeas Corpus by a Person in State Custody*, received on March

17

12, 2019 (doc. 3), should be **DENIED** with prejudice.

**SIGNED this 10th day of December, 2021.**

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

     A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE